MATTHEW W. THOMAS v. NORA E. SCOTT, Plaintiff in Error.

In Banc, November 25, 1908.

**APPELLATE JURISDICTION: Suit to Establish Lost Deed: Title to Real Estate.** A suit, under section 4565, R. S. 1899, to establish a lost or destroyed deed, involves title to real estate, and the appeal from a judgment of the circuit court is to the Supreme Court. If the judgment of the trial court finding and adjudging that the defendant did execute a deed to land to which she had title and wrongfully destroyed that deed, is affirmed on appeal, then her title passed by that deed to plaintiff who is a subsequent purchaser from her named grantee, and is directly affected by and involved in the decree of the court. If on the other hand the court should find that the deed was not executed, or that the named grantee wrongfully obtained possession of it before delivery, or that it was invalid as a binding contract of conveyance and therefore plaintiff is not entitled to have it established as a muniment of title, that holding would of necessity be equivalent to holding that the title did not pass.

On Motion to Transfer to Kansas City Court of Appeals.

MOTION OVERRULED.

*Jas. E. Goodrich* and *William Henry* for plaintiff in error.

*Hewitt & Hewitt* for defendant in error.

GANTT, C. J.—This was a proceeding in the circuit court of DeKalb county, Missouri, to establish a lost deed under section 4565 and following sections of the Revised Statutes 1899.

The plaintiff in his petition set out his title from the Government down to Nora E. Hainline, who acquired her title March 26, 1896. The petition then alleges the execution and delivery of a quitclaim deed from Nora E. Hainline and Robert N. Hainline, of date March 27, 1896, conveying the land in suit to F. Thomas Hainline, which deed the plaintiff alleges was destroyed and seeks to establish by said proceeding, then alleges the execution of a deed by the said F. Thomas Hainline to the plaintiff Matthew W. Thomas, and then prays the court to hear and make a record concerning the execution of the deed from said Nora E. Hainline and her husband to said F. Thomas Hainline, and also to adjudge and determine plaintiff's interest in said lands according to the evidence adjudging the same. The answer filed by Mrs. Scott, formerly Mrs. Nora E. Hainline, denies the ownership of the plaintiff Thomas, and denies the execution of the alleged quitclaim deed to F. Thomas Hainline to her for a valuable consideration, denies taking a deed from said Hainline and destroying it, and alleges that she is the owner in fee simple of the land in question, and asserts that she acquired title under the trustee's deed from one Herschel Bartlett under a power of sale contained in a trust deed executed by said F. Thomas Hainline and wife to secure the payment of a note for $1,300 to the Mutual Benefit Life Insurance Company. She further stated in her answer that, desiring to provide F. Thomas Hainline a home during his life and intending to convey him a life estate, by mistake, the scrivener drew a quitclaim deed, but there was no consideration expressed in the deed, nor in fact any given her for it, as said deed was

never delivered, but that in 1896 F. Thomas Hainline thinking said deed had been so managed as to amount to a delivery had it destroyed with the purpose of revesting the title in Nora E. Hainline, fearing that his creditors might otherwise deprive him of his interest, if any. She further alleged a fraudulent conspiracy between the plaintiff Thomas and F. Thomas Hainline, the chief defendant, by securing the establishment of the deed in question.

The petition was sworn to by F. Thomas Hainline and the plaintiff Matthew W. Thomas did not testify. There was evidence tending to show the execution of the deed and its delivery to F. Thomas Hainline in March, 1896; that thereafter said Hainline gave it to a Mr. Ballinger. Ballinger testified that he had the deed in his possession for three or four months, and judged that it was a quitclaim because the words "quitclaim deed" were at the top of it. There was also testimony that the defendant had stated that she burned the deed herself. On the part of the defendant there was testimony that it was her intention to make a deed granting a life estate to F. Thomas Hainline to the land in suit, that through mistake the scrivener made out a regular quitclaim deed; that there was no consideration expressed in the deed and that she gave the deed to her husband, but there was no delivery of the deed. She offered to prove that her husband was instructed not to deliver the deed to F. Thomas Hainline but the offer was rejected. That F. Thomas Hainline got the deed from Ballinger, and brought it home and directed her to burn it. That J. H. Campbell was present when Hainline told her to burn the deed. Campbell testified that Robert Hainline and F. Thomas Hainline jointly requested him to hold a lifetime deed that Mr. Ballinger had been holding, that in his presence that same day F. Thomas Hainline handed the defendant a paper and told her to

destroy it or burn it. There was also testimony from other witnesses to the effect that F. Thomas Hainline disclaimed any interest in the land in question other than a lifetime deed or lease.

Matthew W. Thomas, the defendant in error, now moves this court to transfer this cause to the Kansas City Court of Appeals for the reason that the title to real estate is not involved in this action. The court in its decree found from the evidence that on the 28th day of March, 1896, Nora Hainline and her husband duly executed a quitclaim deed to the land in suit and acknowledged the same before S. P. Allen, a notary public, for the valuable consideration therein mentioned; that they thereafter delivered said deed to the said F. Thomas Hainline, and the said deed was thereafter destroyed by the said Nora E. Hainline without having been recorded and that the destruction of said deed was not for the purpose of revesting the title in said Nora E. or Robert Hainline or either of them, and the said destruction was without the consent of the said F. Thomas Hainline, and by its decree established the quitclaim deed.

I. In Anthony v. Beal, 111 Mo. 637, it was ruled by this court that in so far as section 4565 of article 4, chapter 59, Revised Statutes 1899, attempts to confer jurisdiction on the circuit court to try, decree and determine title to real estate, it is void under section 28 of article 4 of the Constitution, which provides that ''no bill shall contain more than one subject, which shall be clearly expressed in its title,'' and that a proceeding under said statute cannot be converted into an action to try title to real estate between conflicting claimants, but that in such a proceeding the court should make a finding of facts and adjudge the execution of the alleged deed and its loss, and if found to be sufficient, declare the estate or interest thereby

214 Sup.—28

conveyed. And it will be observed that in that case the jurisdiction of this court to that extent was not questioned by either party to that suit. In Lane v. Lane, 113 Mo. 504, the decision in Anthony v. Beal, supra, was followed, and this court again took jurisdiction to the extent of making a decree establishing the lost deed, but held that the proceeding was not one to try title. The question presented by this motion then to transfer the cause to the Court of Appeals, is whether a proceeding under section 4565 to establish a lost deed in a chain of title involves the title to real estate so as to give this court jurisdiction on appeal under the constitutional provision found in section 12 of article 6 of the Constitution of this State, which confers jurisdiction on this court of appeals "in cases involving title to real estate." While this court entertained jurisdiction in the two cases of Anthony v. Beal and Lane v. Lane, already noted, it is to be observed that in neither of those cases was the question of jurisdiction of this court raised by either party to those cases. But it is squarely presented by the motion in this case to transfer to the Court of Appeals. In Hilton v. St. Louis, 129 Mo. l. c. 391, it was said by this court: "The Constitution does not declare that jurisdiction exists if a question of title is involved in the trial, but that the case tried must involve the title. We take the provision to mean that the title to real estate must, in some way, be affected by the judgment to be rendered on the entire case as made by the pleadings and evidence. This seems to be the view this court has uniformly taken. [Bobb v. Wolff, 105 Mo. 52; Blondeau v. Sheridan, 103 Mo. 134; Bailey v. Winn, 113 Mo. 161; State ex rel. v. Rombauer, 124 Mo. 598.]"

It has been quite uniformly ruled by this court that a suit to set aside a deed in the chain of title as fraudulent was one involving title to real estate, though

a different conclusion has been reached in other juris-
dictions. [Balz v. Nelson, 171 Mo. 682, and cases
cited.]

The object of the proceeding in this case is not
to set aside a deed but to perpetuate the evidence of
the execution and delivery of a deed in the chain of
title to real estate.

The statute requires notice to adversary parties
and provides that the court shall hear the testimony,
make a finding of the facts, adjudge the execution or
non-execution of the alleged deed and its loss, and
declare the extent of the estate or interest thereby con-
veyed. Conceding that in a broad sense this is not
a proceeding to try and adjudge the title, as was held
in Anthony v. Beal, 111 Mo. 637, still it must be plain,
we think, that if the statute has any efficacy what-
ever it was the purpose of the Legislature to preserve
and perpetuate the evidence of the execution, delivery
and loss of an instrument, constituting one of the muni-
ments of title, and admit the judgment of record. Hav-
ing summoned the adversary parties into court and
afforded a free opportunity to be heard as to the exe-
cution and delivery of such a deed, its loss and the
estate conveyed by it, what is the effect of such a pro-
ceeding? In a subsequent suit or action to try the
full title, is the judgment of the court finding its exe-
cution, delivery and loss, a mere *brutum fulmen*, of
no judicial force, and the parties to such proceeding
in no way estopped by it, but at liberty to retry the
whole matter anew? Or was it not the purpose to
give all parties interested a day in court of competent
jurisdiction on this particular question of the execu-
tion and delivery of the particular deed and its legal
effect, and to make the finding of the court a finality
as to the execution of the deed and its loss as between
such parties? Why proceed to all the expense of such

a proceeding, if it establishes nothing and binds no one?

If the adversary party has his day in court, and a hearing and is allowed an appeal, as in this case, why should he not be bound in a subsequent action or suit by the final determination of the court and how can he insist on a retrial of the same facts? The statute provides that the hearing shall be by and in a court of general jurisdiction, and we can perceive no reason why the Legislature would not have the power to confer such jurisdiction upon the court, and when the jurisdiction is exercised in conformity to the provisions of the act, why such a judgment, certainly as against the parties who appear and resist the judgment, should not be conclusive of the facts alleged in the petition and which are found to be true by the court as to the execution, loss or destruction of the instrument and the interest thereby conveyed. It is a judicial duty within the meaning of the Constitution. Such, we take it, was the conclusion reached by this court in Anthony v. Beal, 111 Mo. 637. If we are right in the deductions thus drawn, is not the title to real estate involved? If the setting aside of a deed, which is a muniment of title, involves the title to real estate within the meaning of the Constitution so as to confer jurisdiction on appeal, upon this court, why does not the establishment of a lost deed, also a muniment of title, not involve the title to real estate? We can make no distinction in principle between the two cases.

We keep in view the previous rulings of this court, that the Constitution does not declare that the jurisdiction exists if a question of title is involved in the trial, but that the case tried must involve the title. [Hilton v. St. Louis, 129 Mo. l. c. 391.] But in that same connection it was said, "We take the provision to mean that the title to real estate must, in some way,

be affected by the judgment to be rendered on the entire case as made by the pleadings and evidence. This seems to be the view this court has uniformly taken. [Bobb v. Wolff, 105 Mo. 52; Bailey v. Winn, 113 Mo. 161; State ex rel. v. Rombauer, 124 Mo. 598.]''

How can it be said that the establishment of a deed conveying the whole title to a tract of land by the decree of a court of competent jurisdiction, a decree which the statute provides shall be conclusive of such fact, does not directly affect the title to such real estate? We think it obvious that it does. The section of the Constitution of Illinois relating to appellate courts provides that appeals and writs of error shall lie from those courts to the Supreme Court of the State ''in all criminal cases and cases in which a franchise or *freehold* or the validity of a statute is involved.'' The question has often arisen whether a freehold was involved so as to confer appellate jurisdiction on the Supreme Court. In Monroe v. Van-Meter, 100 Ill. 347, it was held: ''A freehold is involved in an action where the title to the land is presented and in issue between the parties.'' In Piper v. Connelly, 108 Ill. 646, it was said: ''The plea of *liberum tenementum*, necessarily, where, as here, it is directly put in issue by the replication, involves a freehold.'' In Railroad v. Watson, 105 Ill. 217, it was said in general terms that ''a freehold is never involved unless the primary object of the suit is the recovery of a freehold and the judgment or decree will, as between the parties, result in one party gaining and the other losing his estate.'' But in Sanford v. Kane, 127 Ill. l. c. 597, it was said by the same court that, as applied to the facts in Railroad v. Watson, supra, the test thus laid down was doubtless correct, yet it was manifest from many decisions of that court, both prior and subsequent to Railroad v. Watson, that cases might often arise where the test could have

no application, and it was clear "that a freehold was involved within the meaning of the Constitution and statute where the title to a freehold is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue, although the judgment or decree does not result in one party gaining and the other losing the estate."

All of which is pertinent here. While the plaintiff in this proceeding is not seeking a decree of title and the result will not be a decree vesting title in him and divesting Mrs. Scott's title, the inevitable result must be either that she executed the alleged lost deed or that she did not.

If as the circuit court found and adjudged she did execute the deed and wrongfully destroyed it, then her title to the real estate passed and is directly affected and involved by the decree of the circuit court. If on the other hand, this court on appeal should reverse the circuit court and conclude the testimony did not authorize such a decree, the title would remain in her and our judgment would directly affect the title.

Our conclusion is that the pleadings tender an issue in which the title to real estate is directly involved, and that this court has jurisdiction of this appeal, and the motion to transfer must be and is overruled. *Burgess, Valliant, Fox, Lamm* and *Graves, JJ.*, concur. *Woodson, J.*, dissents.